In The



Court of Appeals



Ninth District of Texas at Beaumont


____________________



NO. 09-06-329 CR


____________________



SYD HOUSTON OTEY, Appellant



V.



THE STATE OF TEXAS, Appellee






On Appeal from the Criminal District Court


Jefferson County, Texas


Trial Cause No. 94007






MEMORANDUM OPINION


 A jury convicted appellant Syd Houston Otey of burglary of a habitation, and after
Otey entered into a plea bargain as to punishment, the trial court assessed his punishment at
thirty-five years of confinement. Otey filed this appeal, in which he raises two issues for our
consideration. We affirm.

The Evidence


 The complainant, Judy Radcliff, testified that at approximately 4:00 p.m. on
November 8, 2004, she arrived at her home. When she drove into the driveway, she saw an
"older model, blue truck" sitting in her driveway. Judy got out of her car and walked toward
the back deck of her home, and she observed that the back door was open. Judy testified that
her husband, Patrick, had left the door closed, but unlocked. Judy assumed that someone was
inside her house, so she stopped and called Patrick on her cellular phone. As Judy was
calling Patrick, she saw Otey come out of her house. Judy asked Otey what he was doing in
her house, and Otey responded that Patrick had asked him to do some plumbing work. 
Patrick told Judy that he had not hired Otey, and Judy then handed her phone to Otey and told
him that he needed to speak to her husband. Otey and Patrick spoke on the phone, and Otey
returned the phone to Judy and acted as though he intended to re-enter the house. Judy then
instructed Otey to leave, and he complied.

 After Otey left, Judy approached the house and saw a television set on her back porch. 
Judy explained that Otey did not have permission to be in her house on November 8, 2004,
and she had not put the television set on her back porch. Judy waited until Patrick arrived,
and they walked into the house together. Judy testified that upon entering the house, they
"found a few drawers open, and that's it." Judy and Patrick could not tell that any of the
drawers' contents were missing. They contacted the police, and when Officer Swanzy
arrived, Judy described what she had seen and completed a handwritten statement. 
Eventually, a detective asked Judy to review some photographs, and she identified Otey. 
Judy also explained that she had previously met Otey when he did some plumbing work at
her home a few weeks earlier. Judy testified that approximately two months after the
incident, Otey came to her house, "and the conversation that we had basically was that he
was sorry, that he was trying to get his life back together and he asked me not to file charges
on him."

 Patrick testified that on November 8, 2004, he received a phone call from Judy, and
he told her he did not call Otey to do any plumbing work. Patrick explained that he had
previously hired Otey's brother and Otey for a plumbing job. Patrick testified that he
believed Otey and his brother overcharged him for the labor, and he did not intend to use
their services again. Patrick denied giving Otey permission to enter his home on November
8, 2004, but he admitted that he left the door unlocked. Patrick testified that he spoke to Otey
on Judy's cell phone, and when Otey told him he was there to do some plumbing, Patrick
believed Otey had simply made a mistake as to where he was to work. According to Patrick,
Otey said, "Oh, okay[,]" and returned Judy's phone to her.

 Judy told Patrick she believed something was not right about the situation, and he
instructed her not to enter the house until he arrived. When Patrick arrived, he found Judy
sitting in her car in the driveway, and he described her as "shook up." Patrick and Judy
approached the house, and they saw a television set on the deck. Patrick explained that the
television set belonged in the front bedroom of their home, and he had not placed it on the
deck. Patrick also testified that he and Judy saw some of the drawers in the front bedroom
were "pulled out," and he denied pulling the drawers out. According to Patrick, after he and
Judy saw that the drawers were open, they contacted the police, and Officer Swanzy
responded to the call. Patrick gave a statement to Officer Swanzy, and he later spoke with
a detective and gave a typewritten statement.

 Officer Shad Swanzy of the Nederland Police Department testified that he responded
to a call from the Radcliffs. Patrick and Judy described what had transpired, and upon
entering the residence, Officer Swanzy saw a television set on the back porch and noticed
that some drawers were partially open in one of the bedrooms. Officer Swanzy examined the
television set, but he was unable to obtain any fingerprints from it. Judy told Officer Swanzy
that the last name of the individual she saw coming out of her house was "Otey." Officer
Swanzy took the Radcliffs' statements and attempted to locate Otey. Officer Swanzy was
unsuccessful in locating Otey, and he turned the case over to a detective.

Issue One


 In his first issue, Otey argues that the evidence is legally insufficient to support the
verdict because the indictment alleged that the complainant's surname was "Radliff," but her
surname was actually "Radcliff." The rule of idem sonans, (1) which provides that absolute
accuracy in spelling a name is not required if the erroneously spelled name and the correctly
spelled name are pronounced alike, applies to such variances. See Dingler v. State, 705
S.W.2d 144, 145 (Tex. Crim. App. 1984). The issue of whether a name proven by the
evidence is idem sonans with that alleged in the indictment should be determined by the jury. 
Martin v. State, 541 S.W.2d 605, 608 (Tex. Crim. App. 1976). Therefore, unless the two
spellings are patently incapable of being pronounced alike, an appellant who asserts the issue
of idem sonans for the first time on appeal has waived the issue, and his argument presents
nothing for review. Id. We are not convinced that the two spellings of the complainant's
surname cannot be pronounced alike.

 In this case, Otey's counsel made the following motion during the charge conference:

 Comes now the defendant and after The State has rested and prior to offering
any testimony on behalf of the defendant and we respectfully move for an
instructed verdict of not guilty for the following reasons: . . . that there is a
fatal variance between the allegations of the indictment and the proof offered
by The State. Therefore, we are requesting the Honorable Court to instruct a
verdict of not guilty.


Defense counsel's motion does not identify the alleged variance to the trial court or request
that the trial court submit to the jury the issue of whether "Radliff" and "Radcliff" are idem
sonans. Otey has failed to preserve this issue for our review. See id.; Tex. R. App. P.
33.1(a). Accordingly, we overrule issue one.

Issue Two


 In his second issue, Otey asserts the evidence is legally and factually insufficient to
support his conviction. When reviewing the legal sufficiency of the evidence, we must view
the evidence in the light most favorable to the verdict and determine whether any rational
factfinder could have found the essential elements of the offense beyond a reasonable doubt. 
Jackson v. Virginia, 443 U.S. 307, 318-19, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); Ross v.
State, 133 S.W.3d 618, 620 (Tex. Crim. App. 2004). In conducting a factual sufficiency
review, we consider all of the evidence in a neutral light to determine whether the evidence
supporting the verdict is too weak to support the finding of guilt beyond a reasonable doubt,
or if the evidence of guilt, although adequate if considered alone, is so greatly outweighed
by contrary proof that the jury's verdict is not rationally justified. Johnson v. State, 23
S.W.3d 1, 11 (Tex. Crim. App. 2000); see also Watson v. State, 204 S.W.3d 404, 417 (Tex.
Crim. App. 2006).

 Otey was indicted under section 30.02(a)(3) of the Penal Code, which provides, "A
person commits an offense if, without the effective consent of the owner, the person: . . . (3)
enters a building or habitation and commits or attempts to commit a felony, theft, or an
assault." Tex. Pen. Code Ann. § 30.02(a)(3) (Vernon 2003). Judy testified that when she
arrived home, the back door of her home was open, and she saw Otey come out of her house.
Judy had previously met Otey, and she identified Otey as the individual who was in her
home. Both Judy and Patrick testified that upon approaching their home, they saw a
television set on the back porch, and they denied placing it there. Furthermore, Patrick and
Judy both testified that upon entering their home, they found that several dresser drawers had
been opened, and Patrick denied having opened the drawers. Officer Swanzy testified that
the drawers were open and a television set was sitting on the back porch when he entered the
Radcliffs' residence. Judy also testified that Otey apologized to her and asked her not to
press charges.

 Viewing the record in the light most favorable to the verdict, a rational jury could
have concluded beyond a reasonable doubt that Otey was guilty of burglary of a habitation. 
See Tex. Pen. Code Ann. § 30.02(a)(3) (Vernon 2003). Furthermore, a neutral review of the
entire record does not demonstrate that the proof of guilt is so obviously weak as to
undermine confidence in the jury's determination, nor does it demonstrate that the proof of
guilt is greatly outweighed by contrary proof. The evidence is legally and factually sufficient
to support the verdict. We overrule issue two and affirm the trial court's judgment.

 AFFIRMED.



 

 STEVE McKEITHEN

 Chief Justice


Submitted on March 22, 2007

Opinion Delivered April 25, 2007

Do Not Publish


Before McKeithen, C.J., Gaultney and Horton, JJ.
1. "Idem sonans" means "of the same sound." Jones v. State, 115 Tex. Crim. 418, 27
S.W.2d 653, 655 (1930).